**Bruce Paul WITTE, Plaintiff, Appellant,**

**v.**

**JUSTICES OF the NEW HAMPSHIRE SUPERIOR COURT, et al., Defendants, Appellees.**

**No. 87–1160.**

United States Court of Appeals, First Circuit.

Submitted July 31, 1987.

Decided Oct. 19, 1987.

Bruce Paul Witte, on brief, for appellant.

Stephen E. Merrill, Atty. Gen., and David S. Peck, Asst. Atty. Gen., Concord, N.H., on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

PER CURIAM.

Plaintiff, alleging that the New Hampshire Marital Master Program was unconstitutional and that, as his domestic problems had not yet been finally resolved, he faced a realistic risk of being subjected to it in the near future, brought an action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief. The district court, without holding an evidentiary hearing, dismissed the action on the ground that the marital master system satisfied the essentials of due process. Plaintiff has appealed.[1]

Plaintiff contends that the due process clause requires that cases be decided by judges. Marital masters, however, are not judges, at least as defined by state law (under the New Hampshire Constitution, judges are nominated and appointed by the governor and council and hold their office during good behavior, N.H. Const. pt. 2, arts. 46, 73), but rather are lawyers, removable at will. *See* New Hampshire Superior Court Administrative Rules 12–6, 12–7 (marital masters appointed for a three year period, but, notwithstanding their appointment, serve at the pleasure of the court). Consequently, plaintiff feels the marital master system is unconstitutional.

■ Even if we were to assume without deciding that due process requires domestic relations cases to be determined by persons with greater tenure than marital masters, we would find no merit in plaintiff's contention. Plaintiff proceeds as if marital masters have the authority, over the objection of the parties, to finally determine cases. They do not. Rather, they may only make recommendations, and the recommendations have "no binding force upon the court." *Opinion of the Justices,* 128 N.H. 17, 20, 509 A.2d 746, 748 (1986). Masters have no inherent power, but rather derive all their power from the appointing judge or from the agreement of the parties. *See* N.H.Rev.Stat.Ann. § 519:9; R. Wiebusch, 5 New Hampshire Civil Practice and Procedure § 1371 (1984). And masters are required to file a report with the court for the court's action thereon. N.H.Rev.Stat. Ann. § 519:10; Rules of the Superior Court of New Hampshire 84 (report of master to be presented to presiding judge for judge's order).[2] Upon request by either party, masters must "state specifically all matters of fact found by them to have been proved, and their rulings upon all questions of law." N.H.Rev.Stat.Ann. § 519:11. The judge, after reviewing the report, may accept it, recommit the case to the master for further proceedings, or hold further evidentiary hearing himself. N.H.Rev.Stat.Ann. § 519:12; *Cornforth v. Cornforth,* 123 N.H. 61, 64, 455 A.2d 1049, 1051 (1983). After the judge enters a final judgment, the parties may seek review of the judgment from the New Hampshire Supreme Court. Thus, under the marital master system, it is a judge, not a master, which determines the case.

1. Plaintiff is wrong that this court's October 28, 1986 order affirming the dismissal of his earlier action, but without prejudice to appellant's filing a new complaint challenging the marital master system, necessarily determined that any such new complaint would state a federal cause of action. The precise allegations of such a new complaint were not before us and we did not pass on them.

2. Petitioner contends that reports of marital masters are not subject to any significant judicial review, but rather are routinely rubber stamped by the judge without reviewing the record. In support, plaintiff cites *Cornforth v. Cornforth,* 123 N.H. 61, 63, 455 A.2d 1049, 1050–51 (1983). This case does not so state or imply. Rather, *Cornforth* indicates that if the parties fail to provide the judge with a transcript of the proceedings before the master and the judge does not choose to rehear the evidence himself, then the judge may not alter the master's factual findings (although he may correct any error of law apparent on the face of the master's proposed decree). *Cornforth* does state that "in most cases the master's report is routinely *approved* by the trial court," 123 N.H. at 63, 455 A.2d at 1050 (emphasis in original), but that is because "there is rarely a record of the proceedings before a master." Nothing in *Cornforth,* or in anything else to which plaintiff has pointed, precludes a party from having proceedings before a master transcribed and from presenting to a trial judge an adequate record from which to obtain judicial review of the master's findings.

Nor is there any merit in plaintiff's contention that due process requires a judge not only to decide cases but also to actually hear the witnesses. *Cf. United States v. Raddatz,* 447 U.S. 667, 677–81, 100 S.Ct. 2406, 2413–15, 65 L.Ed.2d 424 (1980) (due process does not require that judge hear the testimony in a suppression hearing even though outcome of suppression hearing may, in practical terms, determine the case's outcome; procedure under which magistrate heard evidence on motion to suppress and made a recommendation to the district court, subject to district court's de novo determination of those portions of the magistrate's report to which objection was made, was constitutional).

▪ Plaintiff also argues that the marital master program is unconstitutionally administered. He says that while most, if not all, divorce cases are scheduled for hearing before masters, other types of cases are not. Plaintiff relies on a 1982 memorandum from the Chief Justice of the New Hampshire Superior Court to the clerk of court for Coos County. The memo states that if "exceptional circumstances exist whereby it appears a Justice should preside over a nonjury, high-profile case or one which warrants the use of a Superior Court Justice," then the chief justice may authorize the case to be heard initially by a judge rather than by a master. In the past, plaintiff's divorce case was not treated as a "high-profile" one worthy of initial treatment by a judge, and plaintiff doubts it will be in the future. Plaintiff seems to contend that the standard embodied in the 1982 memorandum for determining which nonjury cases will be heard initially by a judge rather than by a master is so arbitrary as to violate due process and that disparate treatment of "low-profile" and "high-profile" litigants violates equal protection.

Plaintiff has failed adequately to state any due process or equal protection violation. The policy embodied in the 1982 memorandum is not arbitrary. It sets forth a general rule that, for the time period addressed in the memo, justices were to preside over jury trials, while masters were to be assigned to nonjury cases. This jury/nonjury dichotomy is not arbitrary or irrational. At the same time, the chief justice indicated that exceptions might be made, but, understandably, did not attempt to spell out in detail when an exception necessarily would be warranted. There is no indication, and plaintiff has not alleged, that exceptions have been based on race or other suspect category. And we see nothing suggestive of arbitrary treatment violative of due process or equal protection in the chief justice's offhand use of the term "high-profile case."

▪ Plaintiff also complains about varying practices in different counties. He says that in some counties litigants who request a judge receive one while in other counties such a request is refused. In some counties masters sit but two days a week with the result that, depending upon which day a litigant's case is scheduled, he may receive a judge rather than a master. Plaintiff feels this disparate treatment of litigants in different counties is unconstitutional. Plaintiff is wrong. Nothing in the federal constitution requires states to have identical operations in each of their counties. Experimentation or variance in such procedural matters is permissible.

Having found no federal constitutional violation, we do not address plaintiff's claim that the marital master system violates the New Hampshire constitution. That is entirely a matter for the state court. We see no merit in plaintiff's claim that the alleged threatened violation of his state constitutional right to have his case heard and tried by a judge somehow amounts to a fundamental jurisdictional defect cognizable in federal court.

*Affirmed.* .